Charles J. BRAINERD,
Plaintiff–Appellant,

v.

The GOVERNORS OF THE UNIVERSI-
TY OF ALBERTA; J. Peter Meekison;
Eugene S. Lechelt; Pamela Jarvis, De-
fendants–Appellees.

No. 87–2854.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 12, 1988.

Decided April 26, 1989.

Don Awerkamp, Tucson, Ariz., for plain-
tiff-appellant.

D. Michael Mandig, Tucson, Ariz., for
defendants-appellees.

Before CHAMBERS, CANBY and
NORRIS, Circuit Judges.

CANBY, Circuit Judge:

Charles J. Brainerd appeals the dismissal
of his action against J. Peter Meekison and
the Governors of the University of Alberta
for lack of personal jurisdiction. We re-
verse in part, vacate the judgment and
remand.

FACTS[1] AND PROCEEDINGS BELOW

Charles J. Brainerd, the plaintiff, was
formerly employed by the University of

---

1. The facts are drawn from the allegations of
the complaint, which we accept as true for the
purposes of decision.

Alberta, Canada, as a faculty member. The defendants are J. Peter Meekison, Academic Vice President of the University of Alberta, and the Governors of the University of Alberta, the corporate body that directs the University. A dispute arose between Brainerd and the University over the alleged misuse of grant funds. Brainerd and the University entered into a settlement agreement that provided that Brainerd would resign his academic position and the University would provide a specific reference for him, in the form outlined in the agreement. This reference simply stated Brainerd's employment dates, his duties, and that his annual performance evaluations were average or above average.

Brainerd subsequently accepted a tenured position with the University of Arizona. Rumors regarding his departure from the University of Alberta reached administrators at the University of Arizona, and Cliff Conrad, an associate dean at the College of Education of the University of Arizona, telephoned Meekison in Alberta to investigate the rumors. The content of this telephone conversation is the source of this lawsuit. Brainerd alleges that Meekison accused him of misusing federal research funds and travel funds. He further alleges that Meekison told Conrad that he would not hire Brainerd, and as a result of the conversation, Conrad concluded that Meekison had severe reservations about the academic and personal integrity of Brainerd.

Approximately two months later, Nils Hasselmo, Provost of the University of Arizona, telephoned Meekison. Meekison refused to answer Hasselmo's questions regarding Brainerd, and requested that Hasselmo submit any questions he had in writing. Hasselmo followed up with a letter, but Meekison, in a written letter, again refused to respond to these inquiries.

Brainerd subsequently filed suit in Arizona state court against Meekison and the Governors of the University of Alberta[2]

for breach of contract, breach of the covenant of good faith and fair dealing, defamation, and tortious interference with contractual relations. The case was removed to federal district court, and the court granted the defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## DISCUSSION

The jurisdictional facts are not disputed. As a result, this court reviews the determination of personal jurisdiction *de novo. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir.1986). Brainerd must make a prima facie showing of personal jurisdiction to avoid dismissal. *Lake v. Lake,* 817 F.2d 1416, 1420 (9th Cir.1987).

Arizona law governs this personal jurisdiction issue. *See Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1194 (9th Cir. 1988). Arizona's long-arm rule permits personal jurisdiction to the extent permitted by the due process clause of the United States Constitution. *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987); Ariz.R.Civ.P. Rule 4(e)(2). As a result, we need only determine whether personal jurisdiction in this case would meet the requirements of due process. *Sinatra,* 854 F.2d at 1194.

Two defendants are involved in this appeal: Meekison, and his employer, the Governors of the University of Alberta. Personal jurisdiction over each defendant must be analyzed individually. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984).

## A. PERSONAL JURISDICTION OVER MEEKISON

Defendant Meekison's contacts with Arizona, the forum state, consist of his communications to and from the University of Arizona regarding the rumors surrounding

---

**2.** Brainerd also named Eugene S. Lechelt, Chairman of the University of Alberta Psychology Department and a member of its faculty, and Pamela Jarvis, an administrative assistant employed by the University, as defendants. Brainerd does not appeal the dismissal of the action as to these parties.

Brainerd's departure. Meekison received two telephone calls and responded to a letter. Meekison argues that these contacts are insufficient, under the principles of due process, to establish personal jurisdiction. It is the quality of these contacts, however, and not the quantity, that confers personal jurisdiction over a defendant. *See Lake*, 817 F.2d at 1421; *Meyers v. Hamilton Corp.*, 143 Ariz. 249, 253, 693 P.2d 904, 908 (1985).

■ Due process requires that a defendant have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In order to be subject to specific jurisdiction:[3]

1) The nonresident defendant must either:
   —purposefully direct his activities or consummate some transaction with the forum or resident thereof; or
   —perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
2) The claim must be one that arises out of or relates to the defendant's forum-related activities;
3) The exercise of jurisdiction must comport with fair play and substantial justice.

*Lake*, 817 F.2d at 1421. Here, the parties agree that the suit arises out of the communications between individuals at the University of Arizona and defendants at the University of Alberta. The second element, that of specifity, is therefore established. Only the first and third listed elements are at issue in this case.

### 1. *Purposeful Availment and Activities Directed into the Forum*

■ Meekison may not be haled into a court in Arizona because of random, fortui-tous or attenuated contacts, or contacts based upon the unilateral activities of Brainerd or third parties. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The requirement of "purposeful availment" is based on the presumption that it is reasonable to require a defendant who conducts business and benefits from his activities in a state to be subject to the burden of litigating in that state as well. *Id.* at 476, 105 S.Ct. at 2184; *Lake*, 817 F.2d at 1421. Meekison was not engaged in a commercial enterprise, and does not otherwise conduct business in Arizona. It is consequently difficult to conclude that he has enjoyed the benefits or invoked the protection of the forum's laws.

■ The purposeful availment requirement, however, may also be satisfied if the defendant intentionally directed his activities into the forum. *Calder*, 465 U.S. at 789–90, 104 S.Ct. at 1486–87; *Lake*, 817 F.2d at 1421. Meekison is alleged to have committed intentional torts. His communications were directed to Arizona, even though he did not initiate the contact. Assuming the allegations in the complaint are true, Meekison knew the injury and harm stemming from his communications would occur in Arizona, where Brainerd planned to live and work. Those contacts with the forum support personal jurisdiction over Meekison in Arizona.

Both *Calder* and *Lake* support our conclusion that jurisdiction may be asserted over Meekison. In *Calder* the Supreme Court distinguished untargeted negligence, which will not amount to purposeful availment, from intentional and allegedly tortious acts expressly aimed at the forum. *Calder*, 465 U.S. at 789–90, 104 S.Ct. at 1486–87. The Court approved an "effects" test, holding that where the defendants knew that their actions would have a potentially devastating effect on the plaintiff, who resided in California, and that the brunt of the injury caused by their actions would be felt in California, they were sub-

---

**3.** The parties agree that the defendant's have not engaged in activity in Arizona sufficient to sub-ject them to general jurisdiction.

ject to the jurisdiction of the California courts. *Calder,* 465 U.S. at 790, 104 S.Ct. at 1487. The fact that there was no physical contact with California and that their actions all took place in Florida would not relieve them of personal jurisdiction where the effects of their Florida conduct were felt in California. *Id.* This court applied the effects test in *Lake,* and held that where acts are performed for the very purpose of having their consequences felt in the forum state, the forum will have personal jurisdiction over the actor. *Lake,* 817 F.2d at 1423. Meekison's alleged activities clearly parallel those that were held to confer jurisdiction in *Calder* and *Lake.* The same result should follow.

### 2. *Fair Play and Substantial Justice*

Due process also requires that the assertion of jurisdiction be reasonable. *Sinatra,* 854 F.2d at 1198. Several factors must be analyzed to make this determination. These include: (1) burden on the defendant; (2) existence of an alternative forum; (3) convenience and effectiveness of relief for the plaintiff; (4) interest of the forum state; (5) efficiency of adjudication; (6) extent of defendant's purposeful interjection into the forum; and (7) possibility of conflict with other sovereignty. *See Lake,* 817 F.2d at 1421–22.

■ Because Meekison purposefully directed his activities into the forum, personal jurisdiction is presumed to be reasonable. *See Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Haisten,* 784 F.2d at 1397. Meekison has not presented a compelling case that jurisdiction would be unreasonable, which is required to overcome this presumption. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Haisten,* 784 F.2d at 1400.

The other *Lake* factors do not seem to weigh heavily in either direction. Meekison will bear some burden because of the distance, but Arizona is more convenient for the plaintiff because he now lives and works in Tucson. The evidence that will be required to prove the claims is partly at the University of Alberta and partly in Arizona. There appears to be no problem of a conflict with sovereignty, although there is always some concern in holding a foreign defendant subject to the jurisdiction of the United States. *See Sinatra,* 854 F.2d at 1199–1200.

An alternative forum exists, but Arizona has a strong interest in protecting its residents from torts that cause injury within the state, and in providing a forum for relief. *See Sinatra,* 854 F.2d at 1200; *Lake,* 817 F.2d at 1423. Arizona has an interest in addition to the injury to Brainerd. If the defamation occurred, the false statements were imparted to the listeners and readers in Arizona, who were also injured. *See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984).

Brainerd has established a prima facie showing of both sufficient contacts with the forum and the reasonableness of asserting personal jurisdiction over Meekison.

### B. PERSONAL JURISDICTION OVER THE GOVERNORS OF THE UNIVERSITY OF ALBERTA

Brainerd asserts Arizona has personal jurisdiction over the Governors of the University of Alberta under the theory of respondeat superior. Because Meekison was acting in the scope of his employment when responding to the questions posed, Brainerd argues, the Governors are liable for his acts.

The district court did not reach Brainerd's theory of respondeat superior because it found that Meekison's contacts were not sufficient to confer jurisdiction. We therefore have no record upon which to resolve this issue. For this reason, we remand the matter to the district court so that it may have the opportunity to determine in the first instance the appropriateness of jurisdiction over the Governors.

### CONCLUSION

The district court's order dismissing this case for lack of personal jurisdiction is reversed as to defendant Meekison. We vacate the dismissal as to the Governors, and remand the issue of personal jurisdic-

tion over the Governors of the University of Alberta to the district court for redetermination in light of our holding that the court has specific jurisdiction over Meekison.

REVERSED IN PART; VACATED AND REMANDED IN PART.