**Max E. STUTZ, d/b/a Trim–Line of Stutz, and Auto–Trim Design of Stutz Inc., Plaintiffs,**

v.

**The MINNESOTA MINING MANUFACTURING COMPANY, individually and as the survivor corporation of Trim–Line, Inc., Defendants.**

**No. IP–96–0058 C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 15, 1996.

---

Kevin McGoff, Indianapolis, IN, for Plaintiff.

Richard C. Godfrey, Kirkland & Ellis, Chicago, IL, William P. Wooden, Wooden McLaughlin & Sterner, Indianapolis, IN, for Defendant.

## ENTRY GRANTING MOTION TO DISMISS

BARKER, Chief Judge.

On December 26, 1995, Max E. Stutz, d/b/a/ TRIM–LINE OF STUTZ, and his company, AUTO–TRIM DESIGN OF STUTZ, INC. (hereinafter collectively "Stutz"), filed suit against the Minnesota Mining and Manufacturing Company, individually, and as the survivor corporation of Trim–Line, Inc., and TRIM–LINE, INC. (hereinafter collectively "3M"), for breach of contract and violation of an implied covenant of good faith and fair dealing. Stutz filed his Amended Complaint on March 22, 1996. Defendant 3M has moved to dismiss Stutz's Amended Complaint for failure to state a claim because the action is barred by a four-year statute of limitations pursuant to the Uniform Commercial Code ("UCC"), codified under Indiana law as IND.CODE § 26–1–2–725(1). Stutz claims that the UCC time limitation does not bar his individual action because he is a member of a proposed class awaiting certification in a pending Illinois action. If sustainable, the class action, filed five days prior to the expiration of the applicable statute of limitations, will toll the statute for all prospective class members with identical claims after a certification ruling has been made.

Stutz may indeed be a member of the proposed Illinois class. This possibility, however, does not allow Stutz to cloak himself in class membership so that he may receive the tolling provided to class members, then shed

this status before the class action has been given an opportunity to prove its viability through a certification ruling. It is disingenuous for Stutz to present himself as a class member only so that he may file an individual action otherwise barred by the statute of limitations. However, Stutz's failed attempt to file this individual action before a certification decision does not necessarily affect Stutz's eligibility to take advantage of class tolling after a certification decision has been reached as long as the class action is timely, sustainable, and contains claims identical to Stutz's.

## FACTS

On May 27, 1981, Stutz entered into a Sales Distribution Agreement (the "Agreement") with Trim–Line, Inc., authorizing Stutz to use the Trim–Line trade name and to act as an exclusive distributor for the sale and installation of Trim–Line products in the Indianapolis region. On January 2, 1991, Trim–Line's parent company, the Minnesota Mining and Manufacturing Company, sent Stutz a letter that terminated the Agreement with Trim–Line, Inc. Soon thereafter, Trim–Line, Inc. was dissolved as a separate corporation and absorbed by the Minnesota Mining and Manufacturing Company.

Stutz brought a class action against 3M for breach of contract and violation of an implied covenant of good faith and fair dealing in Illinois state court on December 28, 1994, five days before the statute of limitations ran on Stutz's claims which allegedly accrued on January 2, 1991. Stutz, along with two other former distributors of Trim–Line products who had similar sales distribution agreements, were "named plaintiffs," or class representatives, for the entire proposed class. 3M successfully sought dismissal of the class action in June of 1995. Stutz responded one month later by filing the First Amended Complaint, which named himself and one other former Trim–Line distributor, Victor R. Jespersen, as class representatives on behalf of themselves and others similarly situated.

The complaint was amended a second time in September 1995 after 3M again moved for dismissal. In the Second Amended Complaint, Stutz's name no longer appeared in the action's caption, leaving Jespersen as the sole class representative. In December 1995, three months after Stutz's name disappeared from the Illinois class action, Stutz filed this lawsuit in Hendricks Superior Court, Indiana, on behalf of himself and Auto–Trim. In January 1996, 3M removed the case to this court pursuant to 28 U.S.C. §§ 1441 and 1446. 3M has now moved for dismissal of this case pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to file this action before the statute of limitations expired.

## DISCUSSION

### A. Applicable Statute of Limitations

■ 3M moves to dismiss Stutz's complaint because it is barred by IND.CODE § 26–1–2–725(1), Indiana's adaptation of the UCC. Under UCC § 725(1), "[a]n action for breach of *any contract for sale* must be commenced within four (4) years after the cause of action has accrued." (emphasis added). 3M contends that since the Agreement had the "predominate" purpose or "thrust" of the "sale of goods," the UCC statute of limitations applies to this case. Stutz's claims arose on January 2, 1991, when Trim–Line, Inc., terminated the Agreement. Stutz's individual complaint was filed on December 26, 1995, almost five years after the events upon which Stutz bases this action accrued. 3M argues that because the Agreement is governed by the UCC, this action is time-barred by the four-year statute of limitations under UCC § 725(1).

Stutz argues that the UCC does not apply to the Agreement because it was not a "contract for sale." Stutz characterizes the Agreement as a "personal service contract" which merely grants an exclusive "license" to sell Trim–Line products. Stutz contends that because his cause of action is based upon a written contract entered into before September 1, 1982, it must commence within at least 10 years according to the IND.CODE § 34–1–2–2. Thus, Stutz claims his individual action was filed with several years to spare.

Under the Agreement, Trim–Line granted Stutz the authority to act as an "authorized

distributor for the sale and installation" of Trim–Line products. In general, sales distribution agreements—similar to the Agreement in this case—have the "predominate thrust" of accomplishing the "sale of goods," and are therefore governed by the UCC's four-year statute of limitations. *American Suzuki Motor Corp. v. Bill Kummer, Inc.,* 65 F.3d 1381, 1385–86 (7th Cir.1995); *Monarch Beverage Co. v. Tyfield Importers, Inc.,* 823 F.2d 1187, 1190 (7th Cir.1987); *Sally Beauty Co. v. Nexxus Prod. Co.,* 801 F.2d 1001, 1005–1006 (7th Cir.1986); *WICO Corp. v. Willis Indus.,* 567 F.Supp. 352, 355 (N.D.Ill., 1983) *Insul–Mark Midwest, Inc. v. Modern Materials, Inc.,* 612 N.E.2d 550, 554–555 (Ind.1993). Clearly, the Agreement in this case, by its language and its overall purpose, is governed by the four year time limitation provided in UCC § 725(1).

### B. Tolling

In the complaint, Stutz claims that 3M breached the Agreement with Trim–Line through its termination letter that Stutz received on January 2, 1991. Stutz's individual complaint was filed in Indiana state court on December 26, 1995, more than four years after the cause of action accrued. Unless the UCC statute of limitations was tolled by the filing of the Illinois class action lawsuit, this suit must be dismissed under Federal Rule of Civil Procedure 12(b). *Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605 (7th Cir.1995) (affirming dismissal under Rule 12(b) for statute of limitations bar).

█ As a general rule, the commencement of an original class action tolls the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action. *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). In *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court clarified the *American Pipe* rule by holding that the filing of a class action tolls

the statute of limitations for all purported members of a class, regardless of whether they choose to intervene or file individual actions following the denial of class certification.[1] *Crown* at 350, 103 S.Ct. at 2395–96.

This rule, clearly, has persuasive force. If the statute of limitations were not tolled by the filing of the class action, class members would not be able to rely on the existence of the class action to protect their rights. Potential class members would then be required to take individual action prior to the running of the statute of limitations to ensure that their rights would not be lost in the event that class certification is denied. The tolling rule in *American Pipe* was designed to prevent such speculation and resultant duplicative lawsuits. As a policy matter, this rule serves the principle purposes of the Federal Rule of Civil Procedure 23 by facilitating efficiency in litigation. At the same time, the tolling rule maintains the general objective of statutes of limitation by providing defendants with notice of claims against them by requiring that individual claims tolled through class membership be identical to the claims in the class action.

█ 3M argues that any tolling that may have benefitted Stutz as a class member of the Illinois action vanished in August of 1995, when Stutz was dropped as a named plaintiff in the action. 3M characterizes this change in Stutz's status as a "voluntary withdrawal" from the class action, restarting the statute of limitations clock which stopped five days later. In the alternative, 3M argues that by filing his individual action in Indiana, Stutz "opted out" of the pending class action, disqualifying him from taking advantage of class tolling at all. Stutz responds to both of these arguments by stating that although he abdicated his position as a class representative in the Second Amended Complaint, filed in August of 1995, he never opted out of the class action and is therefore still eligible for tolling as a purported class member.

3M offers theoretical arguments as to why its theories of voluntary withdrawal and opt-

---

**1.** With respect to a defendant's need for notice, the Court limited *Crown's* expansion by noting that as soon as an individual claim can no longer be embraced within the putative class action

because the claims are sufficiently different, that individual is automatically deemed to be aware of that fact. *Crown* at 346, 103 S.Ct. at 2394. See also *infra* at n. 2.

ing out prior to certification should be adopted by this court, but provides no precedent to support its theories. This court is not persuaded.

First, 3M argues that Stutz voluntarily withdrew from the class action by filing this individual action. Not only does 3M argue that this action must be dismissed as duplicative, but also that Stutz is completely barred from class participation because he knowingly took other action. 3M's proposition presumes that a plaintiff's individual claims are the same as that of the proposed class. Individual claims identical to those in a class action put the plaintiff in the proposed class, thereby protecting those claims until the class is certified or decertified. Stutz may not file his individual claim prior to a ruling on class certification, but his misguided or premature attempt does not necessarily change Stutz's legal eligibility for class tolling.

3M's theory that Stutz effectively opted out of the Illinois action prior to a class certification ruling is also flawed. Opting out is not a meaningful alternative prior to a certification decision in the context of an individual plaintiff whose claims are time-barred. When the time to file an individual suit in compliance with the statute of limitations has come and gone, a plaintiff is left with only one option. A timely, viable class action is the plaintiff's last opportunity to vindicate his rights, but only those rights encompassed by the class action. In such a situation, the plaintiff cannot opt out of the proposed class because there are no other legal options left.

Stutz could neither have voluntarily withdrawn from nor opted out of a class which has merely been proposed. Further, it is not yet known if the Illinois class action is substantively viable. Stutz may still be able to take advantage of class tolling if he fits into the proposed class, according to the tolling requirements under *American Pipe* and *Crown*. However, Stutz must have individual claims identical to those claims in a viable class action.

Whether Stutz fits into the proposed class depends upon how the class has been defined in the Illinois class action. " 'The commencement of a class action suspends the applicable statute of limitation as to *all asserted members of the class that would have been parties* had the suit been permitted to continue as a class action.' " *Crown* at 353, 103 S.Ct. at 2397 (quoting *American Pipe* at 554, 94 S.Ct. at 766) (emphasis added). This has yet to take place in the Illinois state court, but assuming *arguendo* that Stutz qualifies to be a class member and the action is a viable claim, his individual action before this court still fails at this time, for the reasons explained below.

■ The issue is whether Stutz's claims may qualify for tolling since he is an asserted member of a proposed class prior to certification, allowing him to sustain an individual action filed after the statute of limitations has run. The Supreme Court has implied that an individual may only claim the benefits of class tolling after the class certification decision has been made. *Crown* at 354, 103 at S.Ct. 2397–98. In *Crown*, the Court specifically states that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members *may choose to file their own suits* or to intervene as plaintiffs in the pending action." *Id.* (emphasis added). Judicial recognition of a proposed class, whether it is ultimately certified or decertified, is needed to trigger class tolling. Without an initial ruling with respect to class certification, the class action proposal would be illusory.

This interpretation of *Crown* is reasonable in light of the purposes of the *American Pipe* tolling rule. "The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options *pending a decision on class certification.*" *Crown* at 354, 103 S.Ct. at 2398 (Powell, J., concurring) (emphasis added). Stutz wants his cake and to eat it, too, when he seeks the benefits of tolling as an asserted class member, and as an individual claimant before this court prior to a class certification decision having been reached.

In the interest of judicial economy, the tolling rule grants purported class members tremendous flexibility and protection in order

to avoid duplicative lawsuits. Nonetheless, the tolling rule becomes more demanding when a plaintiff attempts to manipulate the rule in a way that frustrates its underlying purpose. The tolling rule cannot be properly read to protect the individual plaintiff who files an independent action after the statute of limitations has expired but before a certification decision has been rendered in a timely class complaint which supposedly includes the plaintiff. "[T]o find ... that the class action filings tolled the limitations period for plaintiffs' separate suit ... would sanction duplicative suits and violate the policies behind *American Pipe....*" *Wachovia Bank & Trust Co., N.A. v. National Student Marketing Corp.*, 461 F.Supp. 999, 1012 (D.D.C. 1978), *rev'd on other grounds*, 650 F.2d 342 (D.C.Cir.1980).

Thus, Stutz's individual action cannot survive if it is an attempt to circumvent the statute of limitations by tapping into a proposed class only for the purpose of taking advantage of tolling. It is true that a class member may attempt to file a *timely* individual action despite the existence of a similar class action; it is also true that a class member has the option of pursuing an individual claim if he opts out of a class action *after* it has been certified. Stutz may yet have such an opportunity down the road, with respect to his individual claims and defenses which are identical to those in the Illinois class.[2] Even so, before an individual plaintiff may opt out of a certified class or "go it alone" after class decertification (if the statute of limitations has not run), the underlying claims of the class must be actionable. The first hurdle in any lawsuit is stating a valid claim, a mandatory prerequisite in making a certification decision. In Stutz's case, the Illinois class action has already been dismissed twice for failure to state a claim, and awaits another ruling on the Second Amended Complaint. In any event, this is simply another reason why a class certification rul-

ing logically precedes the possibility of opting out. Stutz may not rely on class tolling until the proposed class action is deemed substantively viable and the class is certified or decertified. Only then may an individual who fits the proposed class rely on class tolling when filing an otherwise time-barred individual claim.

## CONCLUSION

Simply put, Stutz contends that even though he is no longer a named representative in a pending Illinois class action, he is still a member of the proposed class for purposes of tolling the statute of limitations with respect to his individual claims and defenses. Because the class action was filed in Illinois before the UCC statute of limitations ran, Stutz claims that he is eligible for tolling benefits as an asserted member of the proposed class notwithstanding the absence of a certification ruling. Stutz did not voluntarily withdraw from the proposed class and is not able to opt out of the proposed class until class certification has been denied or granted. If Stutz chooses to preserve his individual right to sue by purporting that he is a member of proposed Illinois class, he must wait until the class action is deemed viable and the issue of class certification has been decided in order to maintain the general objectives of the statute of limitations and the tolling rule. Finally, class tolling of the statute of limitations may apply to Stutz's individual claims only if they are identical to those claims in a sustainable class action.

This case is dismissed without prejudice with respect to Stutz's individual claims that are identical to those sustainable in the timely class action pending in Illinois, assuming they are deemed by the Illinois court to be viable claims.

---

**2.** For the legal fiction of tolling to be equitable to the defendant, the claims in both the class action and the individual action must be identical. "The [*American Pipe*] rule should not be read ... as leaving a plaintiff free to raise different or peripheral claims following denial of class status." *Crown* at 354, 103 S.Ct. at 2398 (1983) (Powell, J., concurring). Thus, only Stutz's indi-

vidual claims that are identical to those in the pending class action may be saved if the class action is viable and timely. However, any individual claims particular only to Stutz must be dismissed with prejudice, for they are considered "peripheral," and therefore barred by the statute of limitations.